**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KARISMAN  TAYLOR,

      Plaintiff,

v.                                 No. CIV 02-0775  JB/RHS

TODD HUDSON and GERALD HICKS,
in their individual and official capacities,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the Defendants' Motion for Summary Judgment on Qualified Immunity (Doc. 34).  The primary issue is whether Plaintiff Karisman Taylor's allegations demonstrate the violation of a constitutional right that was clearly established at the time of the acts of which he complains.  Because the Court concludes that Taylor has adequately stated the violation of a constitutional right, and applicable Tenth Circuit and Supreme Court case law clearly established the right at the time of the alleged violation, the Court will deny the motion for summary judgment on qualified immunity.  Because genuine issues of material fact exist with respect to Taylor's state law claims for assault and battery, the Court will also deny summary judgment as to those claims.  The Court will, however, enter judgement for the Defendants and against Taylor on his claim for malicious abuse of process.

**FACTUAL AND PROCEDURAL BACKGROUND**

From the parties' briefs and exhibits, the material facts to which no genuine issue exists are the following, except where otherwise indicated:

1

On November 24, 2000, the day of Taylor's arrest, Albuquerque police officer Todd Hudson ("Hudson") was working in the Albuquerque foothills area.  See Transcript of Criminal Proceedings at 18, line 24-25, to p. 19, line 1 (January 7, 2002) (Hudson's testimony).  Hudson was in full uniform and working with fellow officers Gretta Boyer ("Boyer") and Jerry Hicks ("Hicks").  See id. at 19, lines 22-25, to p. 20, lines 1-12.  The three officers entered Best Buy department store where an employee told them their presence was welcome because the employees suspected several people in the store of shoplifting.  See id. at 21, lines 21-25, to p. 22, lines 1-10.

Hicks saw a male suspect take "a bunch of stuff" from under his coat and dump it on a shelf. Id. at 23, lines 3-5.  The officers asked the male suspect and his companion to come up to the front of the store for questioning.  See id. at 23, lines14-16.  While Hicks was interviewing the suspect, Hudson obtained the two men's driver's licenses and student identification cards and went to look for a telephone to run a warrants check.  See id. at 23, lines 18-25, to p. 24, lines 1-7.  Hudson walked toward the check-out station where the telephone was located and where he observed Taylor leaning against a chrome railing.  See id. at 24, lines 21-23.

Taylor was wearing a blue Best Buy T-shirt and a name tag.  See id. at 26, lines 1-3.  Hudson walked passed Taylor and asked him: "Hey, is it all right if I use this phone over here?"  Transcript of Criminal Proceedings at 31, lines 23-25, to p. 32, line 1 (January 9, 2002) (Taylor's testimony). Taylor responded by saying: "I don't know, I guess."  Id. at 32, lines 1-2.  Hudson then answered: "What do you mean you guess?  Don't you work here at this store?"  Id. at 32, lines 2-4.  Although the parties dispute the remainder of their conversation, following an exchange of words, Taylor admits that he stood off from the railing and asked Hudson: "Why are you giving me a hard time?" Id. at 32, lines 16-17.

After stepping away from the railing, Taylor walked toward Hudson with his hands moving. See Transcript of January 9, 2002, at 33, lines 4-9. Hudson perceived Taylor's demeanor to be very aggressive and very surprising. See Transcript of January 7, 2002, at 26, lines 13-14. This fact refers to Hudson's subjective state of mind. Taylor disputes that he was aggressive or even that he appeared aggressive. In support of this contention, Taylor provides excerpts from his criminal trial in which other witnesses testified that Taylor did not appear or act in an aggressive manner toward Hudson. See Transcript of Criminal Proceedings at 159, lines 9-11 (January 8, 2002); Transcript of January 9, 2002, at 18, lines 17-21.

The parties dispute Hudson's demeanor and attitude during his conversation with Taylor. At the criminal trial, Hudson's testimony implied that he was, at all times, professional and courteous; he contended that Taylor's alleged aggressive attitude toward him was surprising. See Transcript of January 7, 2002, at 26, lines 13-14. In contrast, Taylor testified that Hudson acted rudely toward him. See Transcript of January 9, 2002, at 32, lines 8-14. Other witnesses also testified at trial that Hudson appeared angry, frustrated, agitated, and aggressive. See Transcript January 8, 2002, at 157, lines 6-11; id. at 158, lines 6-25; id. at 160, lines 1-2. One witness testified that she believed that the officers acted inappropriately toward Taylor. See id. at 170, lines 10-11.

After Taylor stepped away from the railing, Hudson then took a step toward Taylor. See Transcript of January 7, 2002, at 27, lines 21-22. Hudson was trying to "establish a little police officer presence." Id. at 28, lines 2-5. He was hoping that a reasonably prudent man would understand that Taylor's actions and gestures were unwanted. See id. The two men came so close together that their chests touched. See id. at 27, lines 21-23. Hudson testified that he intended to touch chests with Taylor in order to communicate that Taylor should back off. See Transcript of

3

January 8, 2002, at 71, lines 6-10.  Taylor stated that Hudson intentionally chest butted him with a degree of force strong enough to cause him to be moved backward.  See Plaintiff's Memorandum in Support of Opposition to Summary Judgment at 2; Transcript of January 9, 2002, at 33, lines 19-22.  Witness testimony supported Taylor's allegation that Hudson initiated the chest butt.  See Transcript of January 8, 2002, at 160, lines 9-12.

After the bumping of their chests, the parties' stories diverge.  The Defendants argue that Taylor responded by striking Hudson with his arm.  They contend that Taylor has admitted this fact.  See Memorandum in Support of Motion for Summary Judgment at 4 (Doc. 35).  Taylor's testimony does not go quite so far as admitting that he responded to Hudson by striking Hudson with his arm.  Taylor stated: "I was scared.  I wanted to get away from him.  So I took my arm and I like pushed towards his chest to push him away from me and get away."  Transcript of January 9, 2002, at 33, lines 23-25, to p. 34, line 1.  Taylor may have used both hands.  See id. at 34, lines 6-7.  Taylor is not sure if his hands hit Hudson's neck.  See id. at 34, lines 12-15.  Hudson testified that, following this contact, he intended to take Taylor to jail.  See Transcript of January 7, 2002, at 29, lines 9-10.

Taylor objects to the Defendants' characterization that he "struck" Hudson.  Taylor testified at the criminal trial that he did not throw a single punch during the incident and "never hit any man."  Transcript of January 9, 2002, at 35, lines 7-9.  Taylor maintains that his sole contact with Hudson was a defensive motion, as he extended his arms to move away from Hudson.  See Transcript of January 9, 2002, at 33, lines 23-25, to p. 34, line 1.

After Taylor made contact with Hudson, a struggle took place, and the Defendants took Taylor into custody.  The Defendants contend that the struggle was necessary to arrest Taylor.  The parties dispute the amount and type of force that the Defendants used when they placed him under

arrest.  The Defendants contend that the amount of force used was reasonable in light of Taylor's demeanor and conduct.  They deny that the force they used was excessive.  Taylor, on the other hand, testified that the Defendants placed him in a choke-hold, sprayed him with mace, repeatedly punched and kicked him, kneeled on his neck or head, and dragged him across the floor.  See id. at 34, lines 22-24; p. 37, lines 1-24; p. 42, lines 3-20.  Hudson testified that the Defendants did not drag Taylor across the floor while he was lying on his stomach, handcuffed behind his back, but rather pulled him by his arms to move him out of customer traffic.  See Transcript of January 8, 2002, at 43, lines 5-8. Testimony by other witnesses corroborates Taylor's statements.  See id. at 161, lines 20-25; p. 162, lines 23-25; p.163, lines 1-5; p. 173, lines 8-15.

Immediately after the incident, Hudson told paramedics that the companion of the suspected shoplifter had joined the altercation and hit him on the back of the head.  See id. at 23, lines 8-14. At the criminal trial, however, Hudson testified that Taylor had been the one who hit him on the back of the head.  See id. at 23, lines15-22.  Taylor adamantly denies that he ever struck Hudson.  See Transcript of January 9, 2002, at 35, lines 7-9.

As a result of the struggle, Hudson hurt his throat, head, and neck.  See Transcript of January 7, 2002, at 40, lines 8-9.  Hudson also had a large bleeding gash on his leg.  See id. at 40, lines 10-12; Exhibit B to Defendants' Memorandum in Support of Summary Judgment, Photographs of Hudson's injuries.  The struggle also injured Boyer.  She had an injury to the right side of her face, blurred vision to her right eye, pain in her wrists and hands, and soreness in her back and legs.  See Transcript of January 8, 2002, at 84, lines 20-24; Exhibit A to Defendants' Memorandum in Support of Summary Judgment, Photographs of Boyer's injuries.

Hudson arrested Taylor.  Taylor argues that his alleged striking of Hudson in the throat and

Hudson's insistence that Taylor was the person who struck him in the back of the head were part of the Defendants' basis for his arrest and subsequent criminal charges. <u>See</u> Memorandum in Opposition to Motion for Summary Judgment at 9. Detective M.J. Davis subsequently performed an investigation into the incident and filed a criminal complaint charging Taylor with aggravated battery on a police officer. He was ultimately charged with three counts of assault on a police officer and resisting arrest. <u>See</u> Complaint ¶ 42, at 5. A jury acquitted Taylor of the criminal charges in state court.

In his Complaint, Taylor alleges that Hudson and Hicks violated his constitutional rights and committed various torts. His claims are based on the Defendants' efforts to place him into custody after Taylor allegedly struck Hudson. Specifically, Taylor alleges Hudson and Hicks violated his Fourth Amendment rights by arresting him without probable cause. <u>See</u> Complaint, Counts III and IV, ¶¶ 59, 65, at 7-8. Taylor also alleges that the Defendants violated his right to be free from excessive force. <u>See</u> <u>id.</u>, Count VI, ¶ 72, at 9. Under the New Mexico Tort Claims Act, Taylor has brought claims against both Defendants for battery and solely against Hudson for assault and malicious prosecution.

In this motion, the Defendants contend that they are entitled to qualified immunity from Taylor's claims or that the claims are not actionable as a matter of law. The Defendants contend that, given that Taylor admits striking Hudson, the Defendants had probable cause to arrest Taylor under the Fourth Amendment's objective reasonableness analysis. Furthermore, they assert that the amount of force used was reasonable in light of Taylor's conduct. As such, the Defendants argue that they are entitled to qualified immunity from Taylor's Fourth Amendment false arrest, false imprisonment, and excessive force claims.

Hudson contends that Taylor's malicious prosecution claim against him fails because he did not initiate any judicial proceedings against Taylor.  Hudson argues that, even if he did initiate those proceedings, his affirmative defense of probable cause prevails.  And the Defendants contend that Taylor's remaining tort claims of assault and battery lack factual or legal merit.  For these reasons, the Defendants request that this Court dismiss these claims against them with prejudice.

## STANDARDS FOR DECIDING MOTION FOR SUMMARY JUDGMENT

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  The movant may negate elements of the non-movant's factually unsupported claims or defenses "with or without supporting affidavits." Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(a) and (b)).

In response to the movant's motion for summary judgment, the non-movant must set forth facts showing that there is a genuine issue for trial sufficient to support a verdict for the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  To properly respond, the non-moving party "must go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(c)).

If the non-moving party presents evidence that is merely colorful or is not significantly probative, the entry of summary judgment is proper.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient . . . ."  Id. at 252.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  A genuine issue is one that only a trier of fact can resolve because the fact finder could resolve it in favor of either party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248-49.  A material fact is one that can affect the outcome of the suit under the governing substantive law.  See id. at 248.

The standard for summary judgment is essentially the same as the standard for a judgment as a matter of law under rule 50(a), which provides that the "trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(citation omitted).  In ruling on a motion for summary judgment, the district court should not weigh the evidence and determine the truth of the matter.  See id. at 249.  Instead, this Court should ask whether a reasonable jury could return a verdict for the non-moving party based on the evidence before the jury.  See id.  The Court must draw all reasonable factual inferences in favor of the nonmoving party.  See Seamons v. Snow, 206 F.2d 1021, 1026 (10th Cir. 2000).

## QUALIFIED IMMUNITY LAW

When a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff.  See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  Accordingly, "[t]he plaintiff

must first establish that the defendant's actions violated a constitutional or statutory right." Id. (quotation omitted).  If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct.  See id. (citing Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir.1995)).  In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Medina v. Cram, 252 F.3d at 1128 (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)) (internal quotation marks omitted).  It is important, the Supreme Court has noted, that the second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).  Thus, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

"If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Medina v. Cram, 252 F.3d at 1128 (quoting Albright v. Rodriguez, 51 F.3d at 1535) (internal quotation marks omitted).  In making this determination, the Court will view the evidence in the light most favorable to the non-moving party; however, the record must demonstrate that the plaintiff has satisfied his heavy two-part burden. See Medina v. Cram, 252 F.3d at 1128.  Otherwise, the defendants' qualified immunity defense prevails. See Roberts v. Kling, 144 F.3d 710, 711 (10th Cir. 1998).

## LEGAL ANALYSIS

**I.   THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FROM TAYLOR'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS.**

In his Complaint, Taylor has brought separate claims for false arrest and false imprisonment. See Complaint, Counts III and IV.  In support of both counts, he cites his Fourth Amendment constitutional rights.  See id. ¶¶ 59, 65, at 7-8.  Hudson and Hicks contend that they are entitled to qualified immunity from Taylor's Fourth Amendment false arrest and false imprisonment claims. Given that the Fourth Amendment's objectively reasonable standard applies to all seizures of a person, the Court will analyze Taylor's false arrest and false imprisonment claims together.

**A.   BECAUSE THE DEFENDANTS HAVE NOT ESTABLISHED THAT THEY HAD PROBABLE CAUSE TO MAKE AN ARREST, TAYLOR HAS SUFFICIENTLY ALLEGED THE VIOLATION OF A CONSTITUTIONAL RIGHT.**

The first inquiry under the two-part qualified immunity analysis is whether the Defendants' alleged conduct violated a constitutional or statutory right.  Taylor alleges that the Defendants arrested him without probable cause.  An officer may effectuate an arrest without a warrant so long as there is probable cause for the arrest.  See Michigan v. DeFillipo, 443 U.S. 31, 36 (1979). Probable cause justifying an arrest means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Id. at 37.

"When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff."  Romero v. Fay, 45 F.3d 1472, 1476 (quoting Hunter v. Bryant, 502 U.S. 224,

228 (1991)).  "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity."  Hunter v. Bryant, 502 U.S. at 227 (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  See Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995) (stating that the Fourth Amendment inquiry is not into the suspect's state of mind or intentions, but whether, from an objective viewpoint and taking all factors into consideration, the officer acted reasonably).  "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules."  Illinois v. Gates, 462 U.S. 213, 232 (1983).  Furthermore, where probable cause exists, the officer's subjective intent in effectuating an arrest is irrelevant.  See Malley v. Briggs, 475 U.S. 335, 431 (1986).

Hudson testified that he intended to arrest Taylor after Taylor responded to Hudson's chest butt by pushing away from Hudson.  In their brief, the Defendants allege that Hudson could reasonably have believed there was probable cause to arrest Taylor for any one of the following three crimes: assault on a peace officer, battery on a peace officer, and resisting, evading, or obstructing an officer.  See Defendants' Memorandum at 9.  Assault on a peace officer consists of: (i) an attempt to commit a battery upon the person of a peace officer while he is in the lawful discharge of his duties; or (ii) any unlawful act, threat or menacing conduct which causes a peace officer while he is in the lawful discharge of his duties to reasonably believe that he is in danger of receiving an immediate battery.  See NMSA § 30-22-21.  Battery upon a peace officer "is the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner."   NMSA § 30-22-24.  Resisting, evading or obstructing an officer includes resisting or abusing any judge, magistrate or peace officer in the lawful

discharge of his duties.  See NMSA § 30-22-1.

The Defendants rely primarily upon Taylor's testimony that he pushed Hudson with his arm. The Defendants characterize this testimony as an admission by Taylor that he struck Hudson.  Much of the Defendants' argument rests on their contention that Taylor admits that he struck Hudson.  The Defendants contend that the strike gave the officers probable cause to place Taylor under arrest for any of the above offenses.  While the Court believes that there is a dispute whether Taylor used his arm to strike Hudson, there is no dispute that Taylor at least pushed Hudson.  Taylor argues that his contact with or push of Hudson was reasonable and permissible.

The Defendants' essentially argue that, because there was contact between Hudson and Taylor, there was probable cause to arrest him for battery on a police officer.  While there is no dispute there was contact, it is not possible to determine whether that touching was sufficient to establish probable cause.  The Defendants' argument comes very close to saying that, if a citizen touches a police officer, there is probable cause to arrest the citizen.  A citizen may accidentally touch an officer's arm while the officer gives her a ticket, or brush up beside an officer not realizing that the officer is an officer.  The Court is very reluctant to say that any touching provides probable cause, and the Defendants concede that every touching of an officer does not provide probable cause.  See Transcript of Hearing at 12, lines 4-19 (Sept. 19, 2003).  The Court must look to the context to determine whether there was probable cause to arrest Taylor; the fact that a touching occurred is not determinative.

While it is an excessive force case, the  Tenth Circuit's decision in Medina v. Cram, 252 F.3d 1124 (10th Cir. 2001), is instructive in the Court's concluding that merely touching a police officer is insufficient to create probable cause; the Court must look at why the plaintiff is touching the officer

12

and the context of the touching:

> Mr. Medina specifically claims that the officers acted unreasonably in *creating* the need to use force. In addition to considering whether the officers reasonably believed they were in danger at the time they used force, we have considered whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. An officer's conduct before the suspect threatens force is therefore relevant provided it is immediately connected to the seizure and the threat of force. Obviously, events immediately connected with the actual seizure are taken into account in determining whether the seizure is reasonable. This approach is simply a specific application of the "totality of the circumstances" approach inherent in the Fourth Amendment's reasonableness standard.

252 F.3d at 1132 (emphasis in original) (internal citations and quotation marks omitted).

In <u>Allen v. Muskogee</u>, the Tenth Circuit, in an opinion written by the Honorable Paul J. Kelly, Jr, Circuit Judge, reversed the district court for granting summary judgment in an excessive force case. Again, the Tenth Circuit indicated that the district court needed to look at the events preceding the use of force:

> The excessive force inquiry includes not only the officers' actions at the moment that the threat was presented, but also may include their actions in the moments leading up to the suspect's threat of force. The reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. We will thus consider an officer's conduct prior to the suspect's threat of force if the conduct is immediately connected to the suspect's threat of force.
>
> The Defendants have not shown that there is a lack of a genuine issue of material fact with regard to the officers' reasonableness. [S]ome deposition testimony indicates that Lt. Smith ran "screaming" up to Mr. Allen's car and immediately began shouting at Mr. Allen to get out of his car; other testimony indicates that Lt. Smith approached cautiously and tried talking Mr. Allen into giving up the gun. Appellees label these disputes as "minor," but the substantive law indicates otherwise. The entire incident, from the time Lt. Smith arrived to the time of the shooting, took only ninety seconds. Clearly, the officers' preceding actions were so "immediately connected" to Mr. Allen's threat of force that they should be included in the reasonableness inquiry. The differences in eyewitness testimony regarding the officers' approach are therefore material factual disputes. While we express no opinion on the merits, a reasonable

13

jury could conclude on the basis of some of the testimony presented that the officers'
actions were reckless and precipitated the need to use deadly force.

Allen v. Muskogee, 119 F.3d 837, 840-841 (10th Cir. 1997) (internal citations and quotation marks

omitted).

These two decisions suggest that, when determining the existence of probable cause, the

Court must look to Hudson's conduct in determining whether he created the need for Taylor to

respond in a particular way.  With these cases in mind, the Defendants' position does not sufficiently

take into account that Taylor testified and contends that he was doing nothing more than responding

in a reasonable manner to the assault and battery that Hudson had allegedly perpetrated upon him.

There is evidence that Hudson initiated the contact and there is evidence that Taylor's response was

not as great or threatening as Hudson contends.

While the Court does not necessarily agree with Taylor that whether he was behaving or

gesturing in an unwanted manner, as Hudson describes, is irrelevant, Hudson does not have the right

to initiate unwanted, rude, or insolent physical contact between himself and a citizen.  There must be

some justification.  "[P]olice officers, by nature of their training, are generally expected to have a

higher tolerance for offensive conduct and language."  State v. James M., 111 N.M. 473, 477, 806

P.2d 1063, 1067 (Ct. App. 1990).  See State v. Wade, 100 N.M. 152, 155, 667 P.2d 459, 462 (Ct.

App. 1983) ("Screaming obscenities . . . do[es] not amount to 'fighting' words, particularly when

they are addressed to police officers, who are supposed to exercise restraint.").  Hudson testified at

the criminal trial, however, that his approach toward Taylor was contrary to his police training that

had taught him to maintain distance between himself and an aggressive person and to retreat into a

defensive posture.  See Transcript of January 8, 2002, at 32, lines 1-24; to p. 33, line 4.

That Hudson allegedly approached Taylor in an angry manner, while Taylor allegedly attempted to retreat to his original position on the store railing, could imply two things: (i) first, that Hudson was the aggressor in the confrontation between himself and Taylor; and (ii) that, if Hudson believed that Taylor was being aggressive or posed a threat, Hudson should have maintained a distance between them and gone into a defensive posture, rather than approaching and chest butting Taylor, just as his police training had taught him to do. Context is important to determining whether Taylor's response to Hudson's chest butting was reasonable and legally permissible, or provided Hudson with probable cause to arrest Taylor. The evidence may show that Hudson's chest butting rises to the level of the civil torts of assault and battery, or even a criminal matter. A citizen has the right to defend himself from further battery by a police officer so long as that defense was reasonable in measure. See State v. Kraul, 90 N.M. 314, 318, 563 P.2d 108, 112 (Ct. App. 1977), cert. denied, 90 N.M. 637, 567 P.2d (1977) ("The right of self-defense is not barred simply because the other person in the affray is a police officer.").

The Defendants cannot use the fact Taylor pushed Hudson in response to and in defense of Hudson's chest butt as conclusively establishing as a matter of law that Taylor resisted arrest. Hudson testified that he was not attempting to arrest Taylor at the time of the chest butt. Rather, Hudson was "trying to establish a little police presence" and did not intend to "take Plaintiff to jail" until Taylor responded to Hudson's actions by pushing Hudson away from himself. A police officer does not have a privilege or immunity to assault and batter citizens who they feel are not being respectful or deferential enough. Nor does Hudson's position as a police officer mean that Taylor no longer has any right to defend himself from battery and that he must submit to offensive, rude, or insolent touching. The issue is whether that is what Hudson was doing. A motion for summary

15

judgment is not the appropriate time to determine what actually occurred when the facts are in dispute; that question is for the jury to decide.

Hudson and Hicks are not entitled to qualified immunity for the claims of false arrest and false imprisonment because there is evidence that there was no probable cause to support Taylor's arrest. Given that Taylor does not admit to "striking" Hudson, and given that this fact cannot be determined otherwise from the record, the Court cannot say that, as a matter of law, a reasonable officer could have believed there was probable cause to arrest Taylor for the crimes of assault on a peace officer, battery on a peace officer, or resisting, evading, or obstructing an officer at the time of the "touching." Based on the evidence in the record, a reasonable fact finder could conclude that Hudson did not have probable cause to arrest Taylor because Hudson knew that he was the one who initiated, instigated, and caused the initial physical confrontation between himself and Taylor and that Taylor was doing nothing more than responding in a reasonable manner to the unwanted contact.

Taking all well-pled facts as true, and viewing the facts and circumstances in the light most favorable to the non-movant, Taylor has sufficiently alleged the violation of a constitutional right. Having met the first prong of the qualified immunity test, the remaining inquiry for the Court is whether the constitutional rights violated by the Defendants were clearly established at the time of the incident.

B. **THE LAW GOVERNING THE DEFENDANTS' CONDUCT WAS CLEARLY ESTABLISHED AT THE TIME OF THE ALLEGED CONSTITUTIONAL VIOLATION.**

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In Anderson v. Creighton, the Supreme Court of the United

States recognized that the operation of such a standard "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Id. at 639.  The Supreme Court cautioned against requiring too specific a correlation between the misconduct and the established law, refusing to hold that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." Id. at 640.  Rather, the correct standard is that "in the light of pre-existing law the unlawfulness must be apparent." Id.

As a general proposition, the law that a search and seizure must be objectively reasonable under all circumstances was clearly established at the time of the incident.  The Fourth Amendment's guarantee that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" has been a part of the nation's Constitution since 1791.  And more specifically, the Tenth Circuit has held that the Fourth Amendment reasonableness standard is clearly established in the context of § 1983 actions.  See Dixon v. Richer, 922 F.2d 1456, 1462 (10th Cir. 1991).

The clearly established law applicable to § 1983 actions, such as the one Taylor has brought, is that of objective reasonableness of conduct when searching and seizing citizens.  The contours of this right are not only historically well-established, but also well-defined, so that a reasonable official would understand that what he was doing violated that right.  The Defendants, based on their training as police officers, would be aware of the basic tenets of the Fourth Amendment protections against unreasonable search and seizure.

More specifically, the law was also clearly established that an officer's own conduct preceding any action by the citizen should be closely scrutinized in determining overall reasonableness.  See Allen v. Muskogee, 119 F.3d at 840 ("[T]he reasonableness of Defendants' actions depends . . . on

17

whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force."); Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995) (same). These cases clearly establish that officers cannot recklessly create the need to use force. If they do so, they may not be entitled to qualified immunity from excessive force claims. A reasonable officer should similarly understand that he or she would be jeopardizing the qualified immunity defense by creating probable cause for an arrest through reckless conduct that provokes a citizen to respond.

The second prong of the inquiry raised by the qualified immunity defense is therefore met. Taylor has defeated the Defendants' qualified immunity defense by showing that the constitutional right allegedly violated was clearly established at the time of the incident. Therefore, the Court finds that the Defendants are not entitled to qualified immunity with respect to Taylor's claims for false arrest and false imprisonment and will not grant summary judgment on that basis.

**C.    WITHOUT THE QUALIFIED IMMUNITY DEFENSE, THERE MUST BE A FACTUAL DETERMINATION WHETHER HUDSON'S AND HICK'S CONDUCT WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES.**

Because Taylor has successfully overcome the Defendants' claim of qualified immunity, the burden is on the Defendants to show that there are no genuine issues of fact and that they are entitled to judgment as a matter of law. In light of the dispute regarding whether Hudson or Taylor was the initial aggressor in the altercation, the Court finds that the Defendants have failed to meet this burden. In this case, it is for the jury to decide whether the Defendants' conduct was objectively reasonable under the circumstances. Therefore, the Court will deny the Defendants' motion for summary judgment with regard to Taylor's false arrest and false imprisonment claims.

## II.     THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FROM TAYLOR'S FOURTH AMENDMENT EXCESSIVE FORCE CLAIM.

The Defendants contend that, when Hudson attempted to arrest Taylor, he became hostile, combative, and resisted arrest, which required the use of force to effectuate his arrest.  Taylor asserts that this use of force was excessive.  The Defendants argue that the absence of visible physical injuries to Taylor establishes that their use of force was reasonable.  Under the objective reasonableness standard of the Fourth Amendment, the Court must assess the reasonableness of the Defendants' conduct "from the perspective of a reasonable officer on the scene," recognizing that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions.  Graham v. Connor, 490 U.S. 386, 395-397 (1989).

The Defendants contend that, given Taylor's alleged admission that he struck Hudson, and the absence of any physical injuries to Taylor, the officers' use of force was reasonable under the circumstances.  Whether the Defendants' use of force to place Taylor into custody was reasonable under the circumstances depends upon whether Taylor unlawfully struck Hudson or lawfully touched him.  Given that the Court has already determined that Taylor admitted that he touched Hudson, but not that he struck Hudson, and that the Court cannot otherwise determine from the record whether Taylor improperly touched Hudson, the Court cannot properly dismiss Taylor's excessive force claim on that basis.

The Tenth Circuit has recognized that the reasonableness inquiry in excessive force cases overlaps with the qualified immunity question.  See Medina v. Cram, 252 F.3d at 1131.  Specifically, both inquiries require the application of a reasonableness standard to determine whether an officer violated a clearly established right.  See id.  Regardless of this overlap, a court has the responsibility

19

to decide the legal questions that qualified immunity raises; it does not transform legal standards applied to undisputed material facts into factual questions necessitating further discovery.  See id. Although the reasonableness inquiry is fact-specific in nature, the Supreme Court has continued to urge the early resolution of reasonableness questions in the context of qualified immunity.  See id. (citing Anderson v. Creighton, 483 U.S. at 641).

The Fourth Amendment standard requires inquiry into the factual circumstances of every case; relevant factors include the severity of the crime, the potential threat posed by the suspect, and the suspect's attempt to resist or evade arrest.  See Graham v. Connor, 490 U.S. at 396.  In making an arrest, officers may "use some degree of physical coercion or threat thereof to effect it."  Id.  Not every push or shove violates the Fourth Amendment.  See id.  The Court must determine the reasonableness of the force used to effect a particular seizure by "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Id.

In this case, the Court cannot say that the Defendants' use of force was objectively reasonable as a matter of law.  There is evidence to show that the officers' use of force was unreasonable.  The severity of Taylor's alleged crime is in dispute.  The potential threat that Taylor posed is in dispute. It is unclear when and whether Taylor was attempting to protect himself and when and if that became an attempt to resist or evade arrest.  Taylor did not admit "striking" Hudson.  As stated above, without such an admission, the Court cannot properly find that Taylor struck Hudson and that therefore there was probable cause to believe Taylor had committed the fourth degree felony of battery on a peace officer.  The Court cannot say the record shows a clear threat to the Defendants or that there was probable cause to believe he had committed Aggravated Battery on a Peace officer,

a fourth degree felony.  The Court cannot say that the Defendants' use of force was objectively reasonable as a matter of law.

The Defendants look to their own injuries in support of the measure of force they used in effectuating the arrest.  The Defendants contend that Taylor's attempt to resist is well documented by the numerous and significant injuries that Hudson and Boyer received.  The Defendants contrast their injuries with the fact that Taylor appears to have emerged unharmed and maintain that Taylor has failed to offer any evidence to show that the Defendants even slightly injured him.  The Defendants argue that Taylor's lack of injuries shows that the degree of force they used was not excessive.

Taylor does not dispute that the officers were injured as a result of this struggle.  It is, however, within the jury's province to decide whether the injuries that the Defendants suffered were the result of Taylor's efforts to fight or whether they were the result of the Defendants' efforts to punish Taylor for not immediately submitting to Hudson's chest butt.  Taylor contends the photographs of him are insufficient in lighting and posture to show any bruising he suffered by the Defendants' actions.  Moreover, Taylor contends that, because he is an African-American, his bruising would not appear as distinctly as that of a Caucasian person.  Taylor contends that he suffered injuries that a photograph would not identify, such as those related to the use of mace and Hudson kneeling on his head and back for an extended period of time.  Taylor also states that he suffered the humiliating and unnecessary effects of being dragged handcuffed on his stomach across the floor in front of a crowd of customers and co-workers.

The Defendants' argument that the excessive force claim fails because Taylor cannot point to a significant physical injury is inaccurate as a matter of law.  The Tenth Circuit has refused to place

21

such a limit on the availability of excessive force claims.  See Holland v. Harrington, 268 F.3d 1179, 1195 (10th Cir. 2001) ("We likewise decline to adopt a 'bright-line' standard dictating that force cannot be 'excessive' unless it leaves visible cuts, bruises, abrasions or scars.").   While noting that physical injury may be the most obvious injury that flows from the use of excessive force, the Tenth Circuit stated that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests--a person's 'sense of security' and individual dignity."  Id.

Regardless of the Defendants' position, it is for a jury to decide whether the force that the Defendants used in this case was excessive in light of the circumstances.  The Defendants have failed to carry their burden to show that, as a matter of law, the officers' use of force was reasonable and that the Court should dismiss Taylor's excessive force claim.   Under these circumstances, the Court cannot say that there is no evidence to show that the Defendants' use of force was unreasonable.  Accordingly, the Defendants are not entitled to judgment as a matter of law on Taylor's Fourth Amendment excessive force claim.

## III.    GENUINE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO TAYLOR'S STATE LAW CLAIMS FOR ASSAULT AND BATTERY.

In Counts I and II of his Complaint, Taylor asserts claims for assault and battery.  The assault claim contains allegations directed only at Hudson.  Taylor has brought the battery claim against both Hudson and Hicks.  With respect to the assault claim, Hudson states that, because Taylor is the one who initially confronted and ultimately struck him, he is entitled to summary judgment.   See Defendants' Memorandum in Support of Motion for Summary Judgment at 15.   The Defendants further contend that Taylor's battery claim fails because there is no evidence that their use of force

was unlawful or that they physically abused Taylor.  <u>See</u> <u>id.</u> at 14.  Because the Court finds that the

parties dispute several issues of material fact, summary judgment is not appropriate as to these claims.

A.    THE COURT CANNOT SAY THAT HUDSON'S ACTIONS DO NOT MEET
THE ELEMENTS NECESSARY TO STATE AN ACTIONABLE STATE LAW
ASSAULT CLAIM.

Taylor alleges Hudson committed the state tort claim of assault.  <u>See</u> Complaint ¶¶ 45, 46 at

6.  "[F]or there to be an assault, there must [be] an 'act, threat or menacing conduct which causes

another person to reasonably believe that he is in danger of receiving an immediate battery.'" <u>Baca</u>

<u>v. Velez</u>, 114 N.M. 13, 15, 833 P.2d 1194, 1196 (Ct. App. 1992) (citation omitted).  Taylor alleges

that, during their conversation, Hudson became angry and threatened to take Taylor outside and "kick

his little ass."  Complaint ¶ 20 at 3.  Hudson then continued to approach Taylor, ultimately coming

into forceful contact with him.  <u>See</u> <u>id.</u> ¶ 22 at 3.  It was only after this forceful contact by Hudson

that Taylor reacted by using his arms to push himself away from Hudson.  <u>See</u> <u>id.</u> ¶ 23 at 3.

Based on the facts alleged, the Court cannot say that Taylor is the one who initially

confronted and ultimately struck Hudson.  While Taylor admits that he stepped away from the railing

and asked Hudson why he was giving him such a hard time, Taylor insists that it was Hudson that

initiated contact by intentionally chest butting him.  Moreover, Taylor denies that he struck Hudson.

Taylor only admits contacting Hudson in a defensive motion following Hudson's contact.  The

testimony of other witnesses supports Taylor's version of events.  As such, the Court finds that there

is evidence in the record upon which a reasonable jury could find for Taylor.  Accordingly, Hudson

is not entitled to judgment as a matter of law.

**B.    THE COURT CANNOT SAY THAT THE DEFENDANTS' CONDUCT DOES NOT MEET THE ELEMENTS NECESSARY TO STATE AN ACTIONABLE STATE LAW BATTERY CLAIM.**

In his Complaint, Taylor also alleges that Hudson and Hicks committed the state law tort of battery.  See Complaint, ¶ 50 at 6.  To prevail on this claim, Taylor must prove by a preponderance of the evidence that the officers unlawfully and intentionally touched or applied force to Taylor in a rude, insolent, or angry manner.  See N.M.S.A. § 30-3-4.  The Defendants contend that there is no evidence that their use of force was unlawful or that they physically abused Taylor.  The record, however, does contain evidence upon which a reasonable jury could find differently.

Taylor alleges that Hudson first contacted him by forcefully chest butting him.  See Complaint ¶ 22, at 3.  After Taylor pushed Hudson away from him, Hudson violently grabbed Taylor's legs and attempted to take him down to the floor.  See id. ¶ 24, at 3.  During the course of the ensuing struggle, Hudson sprayed Taylor in the face with mace at close range at least two times.  See id. ¶ 32, at 4.  Hudson also punched and kicked Taylor multiple times.  See id. ¶ 34, at 4.  In an effort to handcuff Taylor, Hudson forcefully placed his knees on Taylor's lower back and head in order to change Taylor's arm position.  See id. ¶ 36, at 5.  After the Defendants handcuffed Taylor, Hudson continued to kneel on Taylor's back and head for approximately five minutes.  See id. ¶ 37, at 5. Taylor also alleges that Hicks participated in the battery by forcefully and violently attempting to put him in a "full Nelson," placing him in a chokehold, cutting off his ability to breathe, and suggesting to Hudson that Taylor be sprayed with mace.  See id. ¶¶ 30-31, at 4.

The Court cannot, from the record before it, say that the Defendants applied only the amount of force reasonably necessary to lawfully place Taylor in custody.  Because probable cause may not have existed, there is a question whether any amount of force would be lawful.  Furthermore, while

24

it is true that the officers were injured during the struggle, the Court cannot say, just from the photographic evidence, that Taylor did not suffer any injury as a result of the officers' actions.  Thus, the Court cannot say, as a matter of law, that Taylor's battery claim has no factual or legal merit.

## IV.   HUDSON IS ENTITLED TO SUMMARY JUDGMENT ON TAYLOR'S MALICIOUS PROSECUTION TORT CLAIM.

In his Complaint, Taylor brings a malicious prosecution tort claim against Hudson.  See Complaint, Count V.  In New Mexico, the Supreme Court has merged the torts of malicious prosecution and abuse of process into a single cause of action known as "malicious abuse of process." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 17, 953 P.2d 277, 283.  The elements of this new cause of action are: (i) the defendant initiated judicial proceedings against the plaintiff; (ii) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (iii) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (iv) damages.  See id.  In a claim for malicious abuse of process, the plaintiff has the burden of proving that the defendant initiated judicial proceedings against him or her.  See Weststar Mortg. Corp. v. Jackson, 2003-NMSC-002, ¶ 9, 61 P.3d 823, 829.

It is undisputed that Albuquerque Police Department Detective M. J. Davis, not Hudson, investigated the incident and initiated the criminal complaint against Taylor.  Taylor contends the fact that Hudson was not the individual who actually filed the criminal charges is a red herring. Taylor argues that his malicious abuse of process claim survives because Detective Davis based his complaint on Hudson's false statements.  Taylor urges that Hudson must answer for his own conduct and the resulting damages, and that Hudson is not entitled to dismissal of the malicious prosecution claim.

It is true that New Mexico has recognized a limited exception to the requirement that a

25

plaintiff establish that the defendant initiated judicial proceedings against him or her.  When faced

with a similar question in Westar Mortg. Corp. v. Jackson, the New Mexico Supreme Court stated

that "[t]he defendant can be regarded as an instigator of the proceeding only if . . . he or she

communicates material information falsely and the prosecutor relies upon his or her statement."

Westar Mortg. Corp. v. Jackson, 2003-NMSC-002 at ¶ 11, 61 P.3d at 830 (quoting Dan B. Dobbs,

The Law of Torts, § 431, at 1217 (2000)) (emphasis added).  The court also referred back to Hughes

v. Van Bruggen, 44 N.M. 534, 539, 105 P.2d 494, 497 (1940), in which the court had cited with

approval the following language from the Restatement (Second) of Torts, § 653 (1997): "In order

to charge a private person with responsibility for the initiating of proceedings by a public official, it

must therefore appear that his desire to have the proceedings initiated expressed by direction, request,

or pressure of any kind was the determining factor in the official's decision to commence the

prosecution or that the information furnished by him upon which official acted was known to be

false."  Hughes v. Van Bruggen, 44 N.M. at 539, 105 P.2d at 497.

Taylor presents no evidence that Davis or the prosecutor relied upon any false statement by

Hudson.  To the contrary, the criminal complaint itself details the steps that Detective Davis took

during his investigation.  He interviewed Boyer and Hicks.  The two officers stated that Taylor had

been resisting Hudson by "kicking and slashing out with his hands."  Criminal Complaint at 1, Exhibit

D to Defendants' Motion for Summary Judgment.  Boyer and Hicks also told Davis that Taylor

continued to fight despite numerous commands that Taylor place his hands behind his back.  See id.

Davis also interviewed Mr. Montoya, the suspected shoplifter's companion.  Mr. Montoya told Davis

that Taylor had "jumped towards the officer and grabbed him by the neck."  Id. at 2.  Davis also

personally viewed the video tape.  In the criminal complaint, Davis describes the video tape as

26

depicting Taylor "proceed[ing] to jump towards Officer Hudson and grab him by the throat in an angry manner with intent on injuring Officer Hudson." Id.

On the basis of this information, Davis filed the criminal complaint in Bernalillo County Metropolitan Court charging Taylor with Aggravated Battery on a Police Officer. See id. at 1. The criminal complaint was filed on November 25, 2000, at 2:04 a.m., only hours after the incident occurred. The only evidence in this record suggests that the criminal charge was the result of Davis' independent investigation and the exercise of his own discretion. There is no evidence that Davis or the prosecutor relied on Hudson's statements to the exclusion of their own independent judgment. Indeed, Davis stated in the criminal complaint that he was "unable to interview Officer Hudson at this time." Id. Accordingly, Taylor has not presented evidence that Hudson exerted pressure on Davis to file the complaint or that he conveyed false information in an effort to cause Davis to do so.

It is the duty of the federal court to follow New Mexico law. Taylor's argument that he may nevertheless bring a malicious abuse of process claim against Hudson does not have support in New Mexico law. The Supreme Court has cautioned trial courts that "the tort of malicious abuse of process must be construed narrowly to protect the right of access to the courts." Dawley v. La Puerta Architectural Antiques, Inc., 2003-NMCA-029, ¶ 13, 62 P.3d 1271, 1275. As a matter of law, Hudson did not initiate judicial proceedings against Taylor. Furthermore, Taylor has failed to present evidence to avail himself of the limited exception to this requirement. Accordingly, Taylor cannot bring a malicious abuse of process claim against Hudson, and the Court will dismiss that claim.[1]

---

[1] Because the Court will dismiss Taylor's malicious prosecution claim for failure to show the existence of an essential element, the Court need not consider Hudson's argument that his affirmative defense of probable cause prevails.

**WHEREFORE, IT IS ORDERED** that the Defendants' Motion for Summary Judgment on Qualified Immunity is granted in part and denied in part.  The Court finds that the Defendants are not entitled to qualified immunity and that genuine issues of material fact exist with respect to the Fourth Amendment claims for false arrest, false imprisonment, and excessive force.  The Court will therefore deny the motion with respect to those claims.  Because the Court finds that there are disputes as to genuine issues of material fact with respect to the state law assault and battery claims, it will also deny the motion for summary judgment on those claims.  The Court grants the motion with respect to Count V of the Plaintiff's Complaint, alleging malicious prosecution (malicious abuse of process), and dismisses that claim with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Sam Bregman
The Bregman Law Firm, P.C.
Albuquerque, NM

*Attorney for Plaintiff*


Kenneth C. Downes
Rick Sandoval
Donald D. Sullivan
Kenneth C. Downes & Associates, P.C.
Albuquerque, NM

*Attorneys for Defendants*

28