**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KARISMAN TAYLOR,

    Plaintiff,

v.                                                                    No. CIV 02-0775 JB/RHS

TODD HUDSON and GERALD HICKS,
in their individual and official capacities,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the Defendants' Motion in Limine No. I: The Exclusion of Evidence Regarding Police Standard Operating Procedures (Doc. 47). The issue is whether the Court should preclude Plaintiff Karisman Taylor ("Taylor") from introducing at trial any evidence that the Defendants violated Albuquerque Police Department's standard operating procedures ("SOPs") during the incident involved in this case. Because the Court concludes that such evidence is relevant to some of the issues in this case, the Court will deny the motion in limine in part. With respect to the Fourth Amendment excessive force claim, however, the Court finds that, even assuming the relevance of the evidence, the possible prejudice to the Defendants of admitting this evidence substantially outweighs the evidence's probative value. Accordingly, the Court will grant the Defendants' motion in limine in part.

**BACKGROUND**

This case arises out of an incident that occurred on November 24, 2000 at Taylor's place of business, Best Buy, in Albuquerque, New Mexico. On that day, Taylor was in his sixth week of work

1

with Best Buy, which employed him to receive and stock merchandise. On November 24, 2000, his employer, for the first time, directed Taylor to work at the front of the store assisting customers with large item purchases.

Defendants, Officers Todd Hudson ("Hudson") and Gerald Hicks ("Hicks"), were on duty and in full uniform when they arrived at Best Buy to browse in the store. While there, Hudson and Hicks noticed a possible shoplifter. The officers brought the suspected shoplifter and his companion to the front of the store for questioning. In an effort to run a warrants check on the suspects, Hudson asked Taylor if he could use the store telephone that was located at a vacant register. Taylor was unsure whether that telephone could be used and so stated to Hudson. Taylor's response dissatisfied and frustrated Hudson. A verbal argument ensued between Hudson and Taylor.

During the verbal exchange, Hudson threatened to beat up Taylor. The two men each took several steps toward one another. Hudson then chest butted Taylor, who reacted by pushing Hudson away from him. Hudson immediately grabbed Taylor in an effort to throw him to the ground. Hicks also joined in and placed Taylor in a choke hold so that Taylor could no longer breathe. Hicks told Hudson to use mace on Taylor. Hudson maced, punched, and kicked Taylor. The Defendants handcuffed Taylor while he was lying on the ground, and, while Taylor was no longer struggling, Hudson kept Taylor pinned to the ground by keeping his knees and weight on Taylor's back and head. The Defendants dragged Taylor across the floor while lying on his stomach.

At the criminal trial involving this same incident, Hudson and Hicks gave testimony regarding SOPs and their training regarding the handling of situations such as the one involved in this case. Specifically, Hudson and Hicks testified that, when confronting an apparently angry person, the SOP is to move back, keeping distance between the officer and the citizen, and to make efforts to calm the

2

situation rather than escalate it.  Hudson testified at the criminal trial that he was not following his training when he approached Taylor and intentionally made physical contact with him to establish "a little police presence."

In his Complaint, Taylor alleges that Hudson's and Hicks' use of force against him was unreasonable, violating his Fourth Amendment right to be free from excessive force.  The Defendants are concerned that, to bolster and to support his claim of excessive force at trial, Taylor may attempt to present evidence regarding the violation of police SOPs.  Taylor may question through cross-examination Hudson and Hicks and the witness officers regarding their violation of Albuquerque Police Department SOPs or other generally accepted SOPs and police training.  In this motion in limine, the Defendants ask the Court to exclude at trial any and all evidence regarding police SOPs, police training, and less intrusive alternatives to the use of force.

## LEGAL ANALYSIS AND DISCUSSION

Courts must analyze claims of police officers' use of excessive force under the Fourth Amendment and its "reasonableness" standard.  Graham v. Connor, 490 U.S. 386, 395 (1989).  This "reasonableness" inquiry is an objective one.  Id. at 397.  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id.  The factors employed to determine reasonableness include the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer or to another, and whether the subject is resisting arrest.  See id. at 396.  See also Tennessee v. Garner, 471 U.S. 1, 11 (1985).

As the Defendants have correctly pointed out, the violation of an SOP is not necessarily equivalent to a violation of the Fourth Amendment.  The Supreme Court of the United States has

stated that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Davis v. Scherer, 468 U.S. 183, 194 (1984) (emphasis added) (footnote omitted). Consistent with other circuit courts, the United States Court of Appeals for the Tenth Circuit has held that the violation of state law and standard police procedures will not turn an otherwise constitutional use of force into a § 1983 violation. See, e.g., Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001) ("[C]laims based on violations of state law and police procedure are not actionable under § 1983."); Romero v. Board of County Comr's of County Lake, State of Colo., 60 F.3d 702, 705 (10th Cir. 1995) ("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim."); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995) ("[V]iolation of a police department regulation is insufficient for liability under section 1983.") (citation omitted).

The Defendants' arguments against permitting the use of SOPs at trial rely to some degree on their characterization of Taylor's intended use of that evidence. The Defendants contend that Taylor is attempting to introduce evidence of SOP violations for the purpose of proving that such conduct is proof of a Fourth Amendment violation. See Defendants' Reply to Response to Motion in Limine No. 1 at 1 (Doc. 50). Taylor disagrees with this characterization and states that he is offering the evidence for purposes other than proving that a violation of SOPs is unconstitutional on its face. Taylor claims that he will introduce SOP evidence in an effort to provide the jurors with information that will assist them in determining whether the Defendants' actions were objectively reasonable from the perspective of an officer at the scene. The first issue is whether the case law permits such use at all.

4

## ADMISSIBILITY OF POLICE PROCEDURE EVIDENCE GENERALLY

In their memorandum, the Defendants rely on the Tenth Circuit's discussion of SOPs in Medina v. Cram, 252 F.3d at 1133. See Memorandum in Support of Motion in Limine No. 1 at 4 (Doc. 48). In Medina v. Cram, the police responded to a call regarding Medina's refusal to return to jail on a bail bond violation and statement that he was armed with a gun. See id. at 1126. After their arrival, the police tried to convince Medina to leave his house peacefully. See id. at 1127. Instead, Medina told the officers that he needed more time and that he was armed with a handgun. See id.

Eventually, Medina "emerged from the house with his left hand in a cup and his right hand wrapped in a towel concealing a staple gun, which Mr. Medina intended as a representation of a weapon." Id. Although ordered to stop, Medina continued to walk toward and into the street. See id. After the officers' use of non-lethal beanbag rounds failed to stop Medina's movement, "an officer released an attack dog, which bit [Medina] and released, returning to the officer." Id. The attack dog was released a second time, causing Medina to drop to the ground and expose the staple gun. See id. Believing that the staple gun was an actual gun and that they were in the line of fire, two officers shot Medina five times. See id.

In response to the officers' assertion of qualified immunity, Medina submitted an expert affidavit which concluded that the officers' use of force did not conform with accepted police guidelines and practices and was, therefore, excessive. See id. at 1133. Medina's expert affidavit did not persuade the Tenth Circuit: "We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983." Id. The Tenth Circuit concluded that the affidavit failed to raise any genuine issue of material fact. See id. The court did not address

whether the expert's affidavit testimony was relevant or whether it would be admissible at trial. Thus, Medina v. Cram does not answer the issue presented here.

The Defendants also rely on several cases from the United States District Court for the District of New Mexico which have addressed the admissibility of SOP evidence. They point out that, in all of those cases, the court ruled that SOP evidence was not admissible and urges this Court to do the same. See Smith v. Stover, Civ. No. 95-1471 JP/WWD, Memorandum Opinion and Order (D.N.M., filed Dec. 9, 1997) (Doc. 127) (excluding evidence of police standard operating procedures on basis that such procedures were not relevant to inquiry whether officer was in danger at the moment of the threat); Marquez v. City of Albuquerque, Civ. No. 01-445 WWD/LFG, Memorandum Opinion and Order (D.N.M., filed Sept. 24, 2002) (Doc. 148) (excluding evidence of police standard operating procedures regarding use of police service dog on basis that violations of the same do not operate to create liability under § 1983); Kampa v. City of Albuquerque, Civ. No. 96-1572 LFG/DJS, Order on Motions in Limine (D.N.M., filed March 9, 1998) (Doc. 138) (excluding evidence of police standard operating procedures on basis that guidelines at issue were not intended for the decedent's safety or benefit).

In Kampa v. City of Albuquerque, Magistrate Judge Garcia articulated the important point that, while "violation of police procedure in and of itself is not constitutionally significant . . . . such procedures are relevant to determining whether use of force is objectively reasonable." Kampa v. City of Albuquerque, Order on Motions in Limine at 4. Judge Garcia relied on a Ninth Circuit decision in determining whether to admit the SOPs at issue. In Scott v. Henrich, 39 F.3d 912 (9th Cir. 1994), the United States Court of Appeals for the Ninth Circuit considered the admissibility of SOPs in the context of evaluating the objective reasonableness of the defendants' actions. The Ninth Circuit

assumed, without deciding, that internal police guidelines are potentially relevant to determining whether use of force is objectively reasonable. The Scott court went on to state that they are relevant only when one of their purposes is to protect the individual against whom force is used. See id. at 915-916.

> Thus, if a police department limits the use of chokeholds to protect suspects from being fatally injured, . . . or restricts the use of deadly force to protect suspects from being shot unnecessarily, . . . such regulations are germane to the reasonableness inquiry in an excessive force claim. But if, for example, the department bans high-speed chases in order to save gas, or to protect bystanders, a suspect arrested after an unauthorized chase can't complain about the violation of a rule not intended for his benefit.

Id. at 916 (internal citations omitted). In both Scott and Kampa, the courts excluded the evidence after finding that the relevant SOPs were not intended for the plaintiffs' benefit or protection.

The case law that the Defendants cite does not create a blanket prohibition against the admissibility of police SOPs in excessive force cases. It does, however, demonstrate a very strong tendency to exclude such evidence on the basis of irrelevancy. This tendency stems from the primary focus of the Fourth Amendment inquiry: whether the officer acted reasonably under the circumstances. There may be situations in which admissibility would be appropriate, such as those described in Scott v. Henrich and Kampa v. City of Albuquerque.

### THE STANDARD OPERATING PROCEDURES IN THIS CASE

The parties have presented the majority of the arguments on this issue to the Court in an abstract manner. The Defendants have argued that evidence of SOP violations is not relevant to this case because such violations are not the equivalent of a Fourth Amendment violation. Taylor has argued that he should be allowed to present SOP evidence to give the jury a "barometer" by which to measure the reasonableness of the Defendants' conduct. Response to Defendants' Motion in

Limine No. 1 at 3 (Doc. 49).

Beyond these general arguments, the parties have specifically informed the Court of only one SOP that may be introduced at trial. The parties have informed the Court that police officers are trained to respond to an aggressive or threatening person by backing up and creating distance between themselves and the other individual. It appears to be undisputed that Hudson did not follow this procedure during the incident involving Taylor. Neither party has presented the Court with any other specific SOPs.

With regard to the specific SOP that the parties have presented to the Court, it appears that a police guideline requiring officers to distance themselves from an aggressive individual is unrelated to the reasonableness of the type and level of force used to arrest Taylor. The relevant context for such an SOP precedes the application of force. Instead, the SOP is more useful with respect to the question whether Hudson or Taylor initiated the contact that triggered the entire struggle.

The question who was the initial aggressor in the altercation between the parties is an important issue in this case. Taylor bases his claims for false imprisonment and false arrest on an allegation that Hudson was the initial aggressor and never had probable cause for the arrest. An SOP requiring Hudson to back away from an aggressive individual is relevant to the determination of who was the initial aggressor in this case. It is relevant because it tends to make it more or less likely that Hudson truly felt that Taylor was being aggressive. See Fed. R. Evid. 401.

The Defendants do not point to any authority suggesting that the SOP is not admissible for the purpose of determining who was the initial aggressor. The cases addressing the general admissibility of SOPs in excessive force cases do not apply because this evidence does not relate to the amount of force actually used. It relates to a different issue and does not run contrary to the

Supreme Court and Tenth Circuit holdings that violation of a police procedure cannot serve as the basis for a Fourth Amendment violation.

Other Tenth Circuit precedent supports the admission of the SOP with respect to the question whether Hudson was the initial aggressor. In a series of cases, the Tenth Circuit has held that courts may consider "'whether [the officers'] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" Medina v. Cram, 252 F.3d at 1132 (quoting Allen v. Muskogee, 119 F.3d 837, 840 (10th Cir. 1997) (in turn quoting Sevier v. City of Lawrence, Kan., 60 F.3d 695, 699 (10th Cir. 1995)). "An officer's conduct before the suspect threatens force is therefore relevant provided it is 'immediately connected' to the seizure and the threat of force." Medina v. Cram, 252 F.3d at 1132 (quoting Allen v. Muskogee, 119 F.3d at 840). See also Romero v. Board of County Commr's, 60 F.3d at 705 n. 5; Bella v. Chamberlain, 24 F.3d 1251, 1256 n.7 (10th Cir. 1994).

In this case, Hudson's act of chest butting Taylor is "immediately connected" to Taylor's alleged threat of force. It was in response to the chest butt that Taylor used his arms to push Hudson away from himself. The Defendants characterize this action as a strike that gave Hudson probable cause to arrest Taylor. Given this immediate connection, it is appropriate for a jury to be aware that Hudson is trained to distance himself from aggressive individuals. Thus, the Court will allow evidence relating to SOPs to establish whether Hudson or Taylor was the initial aggressor.

In addition to intending to introduce SOP evidence with respect to the question of who was the initial aggressor, Taylor has argued that SOPs are "relevant and necessary to show the jury that the type and level of force used by Hudson and Hicks was objectively unreasonable." Response to Defendants' Motion in Limine at 3. In other words, Taylor contends that knowledge of SOPs will

9

assist the jury in its Fourth Amendment analysis. To prevail on his claim for excessive force, Taylor must prove to the jury that Hudson's and Hick's actions and use of force were objectively unreasonable under the factual circumstances of the November 24, 2000 incident. See Graham v. Connor, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

This suggested use of SOP evidence raises a different question than the use for the purpose of establishing that Hudson was the aggressor in the altercation. The use of SOP evidence with respect to the reasonableness of the amount of force actually used in effecting the arrest implicates the rule of law that a violation of police procedures cannot serve as the basis for a constitutional violation. Accordingly, the Court would caution Taylor that, while he may be allowed to argue that the Defendants' use of force was unreasonable because Hudson was the initial aggressor, he cannot argue at trial that such force was unreasonable because Hudson violated a SOP requiring him to distance himself from an aggressive person.

Although the parties have not drawn the Court's attention to other potential SOPs, they have not specifically narrowed their arguments to the SOP discussed above. Accordingly, the Court will also discuss the admissibility of additional SOP evidence. The Court assumes that any other SOP evidence would be related to the actual amount and type of force used in arresting Taylor.

The Defendants contend that, as a matter of law, evidence regarding the violation of police SOPs is not relevant to the Fourth Amendment reasonableness inquiry. The Defendants ask this Court to exclude such evidence under rule 402 of the Federal Rules of Evidence. The Defendants further argue that evidence regarding less intrusive alternatives is irrelevant because the Fourth Amendment does not require the use of the least or even a less forceful alternative so long as the use

10

of force is objectively reasonable.

It is true that courts have consistently held that a violation of an SOP is not equivalent to a constitutional violation. Likewise, courts have cautioned that such a procedural violation cannot serve as the basis for constitutional liability. These decisions do not unequivocally preclude the introduction of SOP evidence in excessive force cases. The Court believes that a limiting instruction may be an adequate cure for the possible prejudice or confusion associated with these rules. The Defendants are correct, however, that "the reasonableness standard does not require that officers use 'alternative less intrusive means.'" Medina v. Cram, 252 F.3d at 1133 (quoting Illinois v. Lafayette, 462 U.S. 640, 647-648 (1983) (internal quotation marks omitted)). The Tenth Circuit has cautioned that to consider officers' failure to use such less intrusive means "would be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene." Medina v. Cram, 252 F.3d at 1133.

Accordingly, the Court will exclude any SOP evidence related to less intrusive alternatives to the amount of force used against Taylor.[1] Such evidence is irrelevant to the Fourth Amendment inquiry. This ruling also applies to SOPs intended for the benefit of suspects that would tend to be

---

[1] The Court interprets Tenth Circuit law to state that evidence of less intrusive alternatives is irrelevant to the Fourth Amendment reasonableness inquiry and thus inadmissible. The Court does note, however, that Taylor has pointed out one case from this district in which a judge allowed such evidence. See Castillo v. Lehockey, et al., Civ. No. 01-626 LFG/WWD, Clerk's Minutes - Jury Selection at 2 (Doc. 149) ("Motion in limine re: use of . . . standard operating procedure; and less-intrusive alternatives. Ct . . . will admonish jury that the issue is not whether less-intrusive alternatives existed, or whether standards were violated, but rather whether the officers' conduct was objectively reasonable. Evid of standards is allowable; and evid of less-intrusive alternatives is allowable."). The Honorable Lorenzo Garcia, United States Magistrate, allowed the plaintiff to introduce SOP evidence related to the use of canine units, a tape on canine training, and a chart of the Reactive Control Model for the use of force. See Castillo v. Lehockey, et al., Clerk's Minutes - Jury Trial - Days One to Five (Docs. 154-155, 157-159). Because, however, Judge Garcia did not enter a formal opinion, the grounds for the decision to admit that evidence are unclear.

admissible under the standard set forth in Scott v. Henrich. To the extent that such SOPs address less intrusive alternatives, they are inadmissible.

Evidence related to the appropriateness of the amount of force used is a different issue. This evidence would need to be unrelated to less intrusive alternatives. Taylor would then face the additional burden of establishing that the SOP in question was designed or adopted for the benefit and protection of persons like himself. See e.g., Scott v. Henrich, 39 F.3d at 915-916; Kampa v. City of Albuquerque, Civ. No. 96-1572 LFG/DJS, Order on Motions in Limine at 5. Even if both of these requirements were met, there is precedent to suggest that the evidence should still be excluded as irrelevant.

In Marquez v. City of Albuquerque, Magistrate Judge Deaton excluded SOP evidence related to the appropriateness of the use of a police service dog in apprehending a fleeing suspect. Such evidence would have gone to the reasonableness of the actual amount of force used. Judge Deaton found it to be irrelevant because "the fact that [the defendant's] conduct may not have conformed with police regulations or operating procedures does not operate to create constitutional liability under Section 1983." Marquez v. City of Albuquerque, Civ. No. 01-445 WWD/LFG, Memorandum Opinion and Order at 2. Two other New Mexico District Court opinions, which the parties did not cite in their briefs, reached the same conclusion under similar circumstances. See L'Esperance v. Mings, Civ. No. 02-258 MCA/RLP, Memorandum Opinion and Order (D.N.M., filed July 11, 2003) (Doc. 132) (concluding that SOP evidence was not relevant in light of rule of law that violation of such procedures is insufficient to establish liability under § 1983); Tanberg v. Sholtis, Civ. No. 02-0348 LCS/LFG, Order on Motions in Limine (D.N.M., filed June 6, 2003) (Doc. 146) (same).

Accordingly, the Court cannot find that such evidence is relevant to the Fourth Amendment

12

inquiry in this case without reviewing it. The presumption will be that it is not admissible. If, however, Taylor presents a specific SOP to the Court for review, and the SOP does not relate to less intrusive means and was designed or adopted for the benefit and protection of persons like himself, the Court will consider the appropriateness of such evidence.

403 ANALYSIS

Without conceding its relevance, the Defendants also ask this Court to exclude SOP evidence on excessive force under rule 403 of the Federal Rules of Evidence because it creates the danger of juror confusion that substantially outweighs its probative value. The Defendants contend that jurors may confuse the difference between a constitutional violation and a violation of police SOPs. The Defendants further argue that allowing this confusion to exist is unnecessary because the only standard upon which a jury can find liability is stated in Graham. Taylor argues that the use of a limiting instruction can remedy any possible confusion.

Prior cases have recognized the danger that the Defendants have identified. See e.g., L'Esperance v. Mings, Civ. No. 02-258 MCA/RLP, Memorandum Opinion and Order at 3; Tanberg v. Sholtis, Civ. No. 02-0348 LCS/LFG, Order on Motions in Limine at 7-8; Marquez v. City of Albuquerque, Civ. No. 01-445 WWD/LFG, Memorandum Opinion and Order at 3. The Defendants argue that the jury's misunderstanding will be magnified when, and if, Taylor argues at trial that Hudson's and Hick's use of force was unreasonable because they failed to follow standard police procedures. In light of the relatively low probative value of such evidence, this Court may follow prior decisions and find that, even if relevant, SOP evidence should be excluded on the basis of undue jury confusion, a tendency to mislead the jury, and undue prejudice. Again, the Court's final decision must await a review of the specific SOPs that Taylor seeks to introduce.

13

**WHEREFORE, IT IS ORDERED** that the Defendants' Motion in Limine I: Exclusion of Evidence Regarding Police Standard Operating Procedures is granted in part and denied in part.[2] Taylor will be allowed to introduce evidence of police standard operating procedures for the purpose of establishing whether Hudson was the initial aggressor in the altercation. Taylor will not be allowed, however, to argue or infer that the Defendants' use of force was unreasonable or excessive because Hudson violated a standard operating procedure by failing to distance himself from Taylor. Taylor will not be allowed to introduce evidence of standard operating procedures related to less intrusive alternatives to the amount or type of force used in effecting the arrest. The Court reserves judgment on other SOPs to determine if they were designed or adopted for the benefit and protection of persons like Taylor and whether the probative value of such SOPs on excessive force outweighs possible jury confusion or undue prejudice to the Defendants.

_____
UNITED STATES DISTRICT JUDGE

Sam Bregman
The Bregman Law Firm, P.C.
Albuquerque, NM

*Attorney for Plaintiff*

---

[2] The Defendants request attorney's fees and costs, but provide no basis for such an award. Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception. The Defendants point to no exception, and none appears available.

Kenneth C. Downes
Rick Sandoval
Donald D. Sullivan
Kenneth C. Downes & Associates, P.C.
Albuquerque, NM

*Attorneys for Defendant*s